Reversed and Rendered and Majority Opinion
filed March 16, 2010.

 

In
The

Fourteenth
Court of Appeals



NO. 14-09-00679-CV



Cypress Forest
Public Utility District, Appellant 

v.

Kleinwood
Municipal Utility District, Appellee 



On Appeal from
the 215th District Court

Harris County, Texas

Trial Court
Cause No. 2009-20986



 

M A J O R I T Y   O P I N I O N


This case involves a municipal utility district’s
allegation that rights acquired under an annexation agreement were appropriated
by another utility district in violation of the takings clause under article I,
section 17 of the Texas Constitution.  Appellee, Kleinwood Municipal Utility
District (“Kleinwood”), filed suit against appellant, Cypress Forest Public
Utility District (“Cypress Forest”), claiming an unconstitutional taking of
rights created under an annexation agreement.  Kleinwood answered the lawsuit
by filing a plea to the jurisdiction.  The trial court denied the plea, and in
turn, Cypress Forest brings this interlocutory appeal.  In two issues, Cypress
Forest complains that the trial court erred in denying its plea to the
jurisdiction.  We reverse and render. 

I.  BACKGROUND

Kleinwood and Cypress Forest are Texas utility
districts under section 59 of article XVI of the Texas Constitution and
chapters 49 and 54 of the Texas Water Code.  See Tex. Const. art. XVI, §
59; see also Tex. Water Code §§ 49.001–.512, 54.001–.813.  This dispute
originated from their competing efforts to secure a contract for the annexing
of certain property to their respective districts.

A.  Annexation Agreements

  The property sought to be annexed, owned by
JP/Raveneaux Partners, L.P. (“JP/Raveneaux”), was a 39-acre tract of
undeveloped land in Harris County (“Raveneaux tract”).  In or around 2005,
JP/Raveneaux and Kera Development, L.P. (collectively “the developers”) began
improving the tract of land for residential and commercial purposes.  They
explored annexation to a utility district for provision of water, sanitary
sewer, and drainage services to the property.  Because the Raveneaux tract was
adjacent to both Kleinwood’s district and Cypress Forest’s district, the
developers considered annexing the property to either utility district.

On October 5, 2006, Kleinwood and the developers entered
into an annexation contract (“Kleinwood annexation agreement”).  The Kleinwood
annexation agreement provided that “[a]t such time as Developer desires to
obtain service to the Tract, Developers shall execute and file . . . [an] . . .
Annexation Petition” requesting that the Raveneaux tract be annexed to
Kleinwood’s district.  The Kleinwood annexation agreement further provided that
if the developers failed to execute a petition for annexation within a year of
the agreement, the Kleinwood annexation agreement would automatically
terminate.    

Additionally, the Kleinwood annexation agreement
provided that the developers might construct water, sanitary sewer, and
drainage facilities needed for improving the Raveneaux tract.  Upon completion
of the necessary infrastructure, the developers agreed to convey the facilities
to Kleinwood.  Kleinwood agreed to provide 257,400 gallons of water per day to
the Raveneaux tract and 94,500 gallons of sewage treatment capacity per day. 
Kleinwood further agreed to use “good faith efforts” to obtain voter approval
for the sale of bonds to reimburse the developers for construction costs of the
facilities.  Thereafter, Kleinwood would be able to tax the owners of
properties within the annexed tract and use those revenues for repayment to its
bondholders and for the benefit of other property owners within its district.  If
construction of the facilities had not commenced within two years of the
agreement, the Kleinwood annexation agreement would automatically terminate.  

Cypress Forest soon learned of the Kleinwood
annexation agreement.  Kleinwood alleges that in early 2008, Cypress Forest
began soliciting and negotiating with the developers.  It encouraged the
developers to abandon the Kleinwood annexation agreement and to enter into a
similar contract with Cypress Forest for the purpose of annexing the Raveneaux
tract to Cypress Forest’s district.  Kleinwood claims that the developers’
attendance at Kleinwood’s board meetings and the developers’ communication with
Kleinwood dwindled thereafter.  On September 2, 2008, and without notice to
Kleinwood, the developers entered into an annexation agreement with Cypress
Forest (“Cypress Forest annexation agreement”) calling for the development of
the Raveneaux tract and annexation of the tract to Cypress Forest’s district. 
Thereafter, the developers sent Kleinwood notice that the Kleinwood annexation
agreement had terminated.  

B.  Trial Court Proceedings

Initially, Kleinwood sued Cypress Forest and the
developers in federal court.  Kleinwood alleged that Cypress Forest had (1)
deprived Kleinwood of its rights created under 42 U.S.C. section 1983, (2)
conspired with the developers in violation of 42 U.S.C. section 1983, (3)
deprived Kleinwood of due process under the Fourteenth Amendment of the United
States Constitution, (4) effected an unconstitutional taking in violation of
article I, section 17 of the Texas Constitution, and (5) tortiously interfered
with Kleinwood’s existing contract with the developers.  Ruling on Cypress
Forest and the developers’ 12(b)(6) motion, the federal district court
dismissed Kleinwood’s section 1983 and Fourteenth Amendment claims with
prejudice and dismissed the state article I, section 17 takings claim without
prejudice.   

Kleinwood then filed its article I takings claim
against Cypress Forest and its board of directors in state district court.  Against
Cypress Forest, Kleinwood claimed only an unconstitutional taking in violation
of article I, section 17.  Cypress Forest later filed a plea to the
jurisdiction, arguing that Kleinwood’s takings claim was in fact an inverse
condemnation cause of action, a claim over which the county civil courts at law
have exclusive jurisdiction pursuant to section 25.1032(c) of the Texas
Government Code.[1]

In response, Kleinwood contended that section
25.1032(c) applied only to eminent domain cases; by contrast, its takings claim
did not allege the exercise of the state’s eminent domain powers.  Kleinwood
argued that because the case involved the taking of contract rights—not real
property—section 25.1032(c) was not applicable.  Cypress Forest later
supplemented its plea to the jurisdiction, further arguing that all article
I, section 17 claims were captured by section 25.1032(c), and thus, Kleinwood’s
article I, section 17 claim could not be adjudicated in the district court. 
Additionally, Cypress Forest argued that it had governmental immunity from
Kleinwood’s takings claim because:  (1) Kleinwood had no vested property
interest under the Kleinwood annexation agreement and (2) Cypress Forest’s act
of contracting with the developers did not constitute a taking because the act
was neither a physical taking nor a regulatory taking.

After a hearing on Cypress Forest’s plea to the
jurisdiction, the trial court denied the plea, and the instant accelerated
appeal ensued.  On appeal, Cypress Forest argues that the district court lacked
jurisdiction on two grounds:  (1) section 25.1032(c) divested the district
court’s jurisdiction to hear Kleinwood’s takings claim and (2) Cypress Forest’s
sovereign immunity had not been waived because Kleinwood failed to plead a
valid takings claim.

II.  STANDARD OF REVIEW

A plea to the jurisdiction seeks dismissal on the
ground that the trial court lacks subject-matter jurisdiction to hear the
cause.  Harris County v. Sykes, 136 S.W.3d 635, 638 (Tex. 2004). 
Whether a court has subject-matter jurisdiction is a question of law which we
review de novo.  Tex. Dep’t of Parks & Wildlife v. Miranda,
133 S.W.3d 217, 226 (Tex. 2004); Tex. Natural Res. Conservation Comm’n v.
IT-Davy, 74 S.W.3d 849, 855 (Tex. 2002).  The plaintiff bears the burden of
alleging facts that affirmatively demonstrate the trial court’s subject-matter
jurisdiction over a case.  Tex. Ass’n of Bus. v. Tex. Air Control Bd.,
852 S.W.2d 440, 446 (Tex. 1993).  

When a plea challenges the pleadings, we determine if
the pleader has alleged facts affirmatively demonstrating the court’s
jurisdiction to hear the case.  Miranda, 133 S.W.3d at 226.  We construe
the pleadings liberally in favor of the plaintiff and look to the pleader’s
intent; we do not decide the merits of the case.  See id.; see also
Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000).   If
the pleadings neither establish jurisdiction nor demonstrate incurable defects
in jurisdiction, we must afford the plaintiff an opportunity to amend its
pleadings.  Miranda, 133 S.W.3d at 226–27.  However, if the pleadings
affirmatively negate jurisdiction, the trial court may grant a plea to the
jurisdiction without allowing the plaintiff the opportunity to amend.  County
of Cameron v. Brown, 80 S.W.3d 549, 555 (Tex. 2002).

When the defendant’s plea challenges the existence of
jurisdictional facts, we consider the relevant evidence submitted by the
parties to the extent necessary to resolve the jurisdictional questions
raised.  See Miranda, 133 S.W.3d at 227.  Then, we assume as true all
evidence favoring the nonmovant.  See id. at 228.  If the evidence generates
a fact question regarding the jurisdictional issue, then the plea to the
jurisdiction must be denied.  Id. at 227–28.  If the evidence is
undisputed or fails to raise a fact question on the jurisdictional issue, then
the trial court rules on the plea to the jurisdiction as a matter of law.  Id.
at 228.         

III.  TRIAL COURT’S JURISDICTION 

In its first issue, Cypress Forest contends that the
lower district court lacked jurisdiction to hear Kleinwood’s article I, section
17 claim because:  (1) Government Code section 25.1032(c) vests the county
civil court at law with exclusive jurisdiction over Kleinwood’s takings claim
and (2) Kleinwood’s claim is not a taking by eminent domain.  

A.  Section 25.1032(c)

Cypress Forest first contends that Kleinwood’s
takings claim falls within the county civil court at law’s exclusive
jurisdiction.  Section 25.1032(c) provides that a “county civil court at law
has exclusive jurisdiction in Harris County of eminent domain proceedings, both
statutory and inverse, regardless of the amount in controversy.”  Tex. Gov’t
Code § 25.1032(c).   Relying on two cases from our sister court, Cypress Forest
contends that the language of this section covers all article I,
section 17 cases, not just statutory and inverse eminent domain proceedings.   See
Villarreal v. Harris County, 226 S.W.3d 537 (Tex. App.—Houston [1st Dist.]
2006, no pet.); City of Houston v. Boyle, 148 S.W.3d 171 (Tex.
App.—Houston [1st Dist.] 2004, no pet.).[2] 
         

1.  Villarreal and Boyle

Contrary to Cypress Forest’s contention, the First
Court’s opinions in Villarreal and Boyle did not hold that all
article 1, section 17 claims are subject to section 25.1032(c).  See
Villarreal, 226 S.W.3d at 544 (holding “that the improper use of taxing
power to accomplish a taking of real property is a use of eminent domain power,
and thus, jurisdiction over any claim that alleges such rests exclusively in
the Harris County Civil Courts at Law”); see also Boyle, 148
S.W.3d at 179 (“Because Boyle’s pleadings seek recovery premised on allegations
that the City’s alleged conduct—both nonnegligent nuisance and inverse
condemnation—resulted in a taking of his property that entitled him to
compensation, we conclude that exclusive jurisdiction over Boyle’s . . .
inverse condemnation claim . . . is in the Harris County Civil Courts at Law
pursuant to section 25.1032(c) of the Government Code.”).  Villarreal
did not hold that all article I, section 17 claims are subject to
section 25.1032(c).  Rather, Villarreal concluded that a state’s
improper use of its taxing power to take a person’s real property is an
exercise of eminent domain powers and therefore subject to section 25.1032(c). 
226 S.W.3d at 544.  Here, there is no allegation of an improper use of taxing
power to take real property.

Furthermore, the plaintiff in Boyle explicitly
pleaded an inverse condemnation claim, which subjected the suit to the county
court’s exclusive jurisdiction by the plain language of section 25.1032(c). 
148 S.W.3d at 174.   Kleinwood’s pleadings do not allege injury by “inverse
condemnation” on their face.  Accordingly, Cypress Forest’s reliance on Villarreal
and Boyle for the proposition that all article I, section 17 claims fall
under section 25.1032(c) of the Government Code is misplaced.  Because Cypress
Forest cites to no authority holding that all article I, section 17 claims are
subject to section 25.1032(c), we reject Cypress Forest’s argument and overrule
its first issue.

IV.  VALIDITY OF TAKINGS CLAIM AND GOVERNMENTAL IMMUNITY

In its second issue, Cypress Forest argues alternatively
that because the rights alleged to have been taken from Kleinwood under the Kleinwood
annexation agreement were not an exercise of eminent domain powers, its
sovereign immunity has not been waived, and it is therefore immune from suit.  See
Gen. Servs. Comm’n v. Little-Tex Insulation Co., 39 S.W.3d 591, 598–99
(Tex. 2001) (reasoning that the immunity doctrine shielded the State from an
invalid constitutional-takings claim).  Cypress Forest    supports its legal
conclusion on the facts that (1) the right to annexation was contingent on the
developers’ constructing the facilities; (2) the right to tax was contingent on
ever-changing tax laws; (3) interference with a contract does not constitute a
“taking” under Texas law; and (4) the rights allegedly appropriated were
contract rights, not real property rights.  

A.  Taking by Eminent Domain

The distinction between a taking by eminent domain
and a taking not in eminent domain is a murky topic in constitutional
condemnation jurisprudence.  Article I, section 17 claims have generally fallen
under one of three categories:  (1) the taking or interference of a right by
physical possession or regulation; (2) the taking of property by the state’s
exercise of a colorable contract right; and (3) the taking, damaging, or
destruction of real property by eminent domain or inverse condemnation.  

1.  Physical or Regulatory Taking

To establish a takings claim, a plaintiff must prove
(1) the intentional performance by the governmental entity of certain acts, (2)
that resulted in a “taking” of property, (3) for public use.  Id. at 598.
 A taking can be either a physical taking or a regulatory taking. Tarrant
Reg’l Water Dist. v. Gragg, 151 S.W.3d 546, 554 (Tex. 2004); Mayhew v.
Town of Sunnyvale, 964 S.W.2d 922, 933 (Tex. 1998). A physical taking
occurs when the government physically authorizes an unwarranted physical
occupation of the property. Gragg, 151 S.W.3d at 554; Mayhew, 964
S.W.2d at 933.  Kleinwood did not allege a physical occupation; thus, it has
not alleged a physical taking.

In the absence of any physical invasion, a regulatory
taking may occur by means of a governmental restriction that constitutes an
unreasonable interference with the use and enjoyment of the property. Lowenberg
v. City of Dallas, 168 S.W.3d 800, 802 (Tex. 2005); Taub v. City of Deer Park, 882 S.W.2d 824, 826 (Tex. 1994).
 In the instant case, there are no allegations or facts presenting a regulatory
taking.  Accordingly, Cypress Forest’s acts do not constitute a physical or
regulatory taking.

2.  Contract Disputes

 The Texas Supreme Court has held that when the State withholds property in a
contractual context, it lacks the necessary intent to commit a taking because it “is acting within a
color of right under the contract
and not under its eminent domain
powers.” Little-Tex
Insulation Co., 39 S.W.3d at 598–99.  
The Supreme Court’s reasoning rests on the concept that the State may wear two
hats:  one as a contracting party, “akin to a private citizen,” and another as a
sovereign.  Id. at 599.  However, this theory does not apply in the
instant case because the complained-of act—Cypress Forest’s interference with
the Kleinwood annexation agreement—was not pursuant to an existing contract
right belonging to Cypress Forest.  

Kleinwood complains of Cypress Forest’s alleged acts prior
to the Cypress Forest annexation agreement: by persuading the
developers to breach its contract with Kleinwood and by entering into the
Cypress Forest annexation agreement, Cypress Forest appropriated Kleinwood’s
rights to have the tract annexed to its district and to tax the property in the
future.  These alleged acts of interference occurred before Cypress Forest was
a party to the Cypress Forest annexation agreement.  Thus, the alleged act of
taking—interfering with the Kleinwood annexation agreement—was not pursuant to an
existing colorable contract right created under the Cypress Forest
annexation agreement.  Accordingly, Cypress Forest was not acting under
existing contract rights.

3.  Eminent Domain

Eminent domain refers to the power to take private
property for public use by the state, municipalities, and private persons or
corporations authorized to exercise a function of state power.  Taub v.
Aquila Sw. Pipeline Corp., 93 S.W.3d 451, 456 (Tex. App.—Houston [14th
Dist.] 2002, no pet.) (quoting BLACK’S LAW DICTIONARY 523 (6th ed. 1990)); see
also Ft. Worth & D.C. Ry. Co. v. Ammons, 215 S.W.2d 407, 409 (Tex. Civ.
App.—Amarillo 1948, writ ref’d n.r.e.) (stating that eminent domain is the right
of the state, or of those to whom power has been delegated, to condemn private
property for public use, and to take ownership and possession of property on
paying owner due compensation).  The process of exercising the power of eminent
domain is commonly referred to as “condemnation” or “expropriation.”  Taub,
93 S.W.3d at 456.  Because a taking by eminent domain traditionally has been
used to seek compensation for the damaging, destruction, or taking of real
property, Kleinwood attempts to distinguish its takings claim from eminent
domain cases: the rights for which Kleinwood seeks compensation are contract
rights to have the Raveneaux tract annexed to its district and to tax the
property owners within the tract.  

Although eminent domain has traditionally been used
in the condemning of real property, neither party has directed the Court to
authority reflecting that such power is limited to the taking of real property. 
However, at least one court of appeals has acknowledged, in the context of
article I, section 17, that eminent domain involves condemnation of interests
in real property, not the alleged taking of property interests created under a
contract.  See State v. Operating Contractors/State, 985 S.W.2d 646, 651
(Tex. App.—Austin 1999, pet. denied); see also MBP Corp. v. Bd. Of Trs. of
Galveston Wharves, 297 S.W.3d 483, 491–92 (Tex. App.—Houston [14th Dist.]
2009, no pet.).  We decline Kleinwood’s invitation to extend the definition of
condemned property, in the context of eminent domain, to include contract
rights.  Accordingly, we sustain Cypress Forest’s second issue to the extent
that the alleged taking of Kleinwood’s contract rights is not an exercise of
eminent domain.  

B.  Vested Property Interest

Cypress Forest further contends in its second issue that
Kleinwood failed to plead a valid takings claim because (1) the right to
annexation was contingent on the developers’ construction of the facilities and
the right to tax was contingent on ever-changing tax laws and (2) Cypress did
not appropriate Kleinwood’s contract rights.[3] 


A person asserting a valid article I takings claim
must show that it has a vested property interest.  The two property interests
that Kleinwood asserts were taken are (1) the right to be petitioned to have
the Raveneaux tract annexed to its district and (2) the right to tax property
owners within the tract and its district.  Neither of these interests is a vested
property right.  See City of Houston v. Northwood Mun. Util. Dist. No. 1,
73 S.W.3d 304, 311 (Tex. App.—Houston [1st Dist.] 2001, pet. denied)
(concluding that an “interest in receiving ad valorem tax revenues is not a
vested property right for purposes of asserting a violation of article I,
section 17”).  The right to collect ad valorem tax revenues is dependent on the
characteristics and status of the entity owning the property.  Id.  Such
taxes are based merely on the expectancy that all future landowners in the district
will be subject to paying ad valorem taxes.  Id.   Accordingly, Kleinwood’s
right to collect ad valorem taxes is not a vested right, but a “qualified”
property right.  See id.  Likewise, Kleinwood’s right to annexation was
“qualified.”  This right vested upon only the developers’ discretion to execute
and file the petition for annexation.  Furthermore, if the petition for
annexation was not filed within a year of the Kleinwood annexation agreement,
the agreement terminated.  Accordingly, Kleinwood did not have a vested property
right. 

Because Kleinwood has failed to plead a vested
property interest, and therefore no valid takings claim, governmental immunity
bars its suit against Cypress Forest.  See Little-Tex Insulation Co., 39
S.W.3d at 599.  We sustain Cypress Forest’s second issue to the extent that
Kleinwood did not plead a vested property interest.  Accordingly, we hold that
the trial court erred in denying Cypress Forest’s plea to the jurisdiction.

V.  CONCLUSION

We reverse the trial court’s order denying Cypress
Forest’s plea to the jurisdiction and render judgment dismissing Kleinwood’s
suit for want of jurisdiction.

Senior Justice Mirabal concurs in the result with the
following note: “Justice Mirabal concurs in the result, joining only in the
analysis under the heading ‘IV.B. Vested Property Interest.’”








 

 

                                                                                    

                                                                        /s/        Adele
Hedges

                                                                                    Chief
Justice

 

 

 

Panel consists of Chief Justice Hedges,
Justice Anderson, and Senior Justice Mirabal.* (Senior Justice Mirabal
concurring in the result with note).

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

*   Senior Justice Margaret Garner
Mirabal sitting by assignment.









[1]
See Tex. Gov’t Code § 25.1032(c).





[2]
In its reply brief, Cypress Forest further argues that because Kleinwood’s
takings claim is really an inverse condemnation claim, it is subject to section
25.1032(c).  In response, Kleinwood contends that its article I, section 17
takings claim is a taking of contract rights, not real property rights, and
therefore not subject to section 25.1032(c).





[3]
Cypress Forest’s argument that it did not appropriate Kleinwood’s contract
rights addresses the merits of Kleinwood’s takings claim.  However, a challenge
to the merits of a claim is not proper in a plea to the jurisdiction.