# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-21-00236-CV

**Jesus Life Center, Appellant**

**v.**

**The City of Georgetown, Texas, Appellee**

### FROM THE 26TH DISTRICT COURT OF WILLIAMSON COUNTY
### NO. 20-1600-C26, THE HONORABLE DONNA GAYLE KING, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Jesus Life Center (JLC) sued Atmos Energy Corporation and the City of Georgetown (the City) after JLC was forced to evacuate its premises for several months while Atmos[1] took measures to vent dangerous levels of residual natural gas that had been trapped underground after Atmos's repair of a gas leak. JLC asserted a claim of inverse condemnation against the City and sought damages for its mortgage default and lost revenue allegedly caused by the forced closure of its facility. The City filed a plea to the jurisdiction, which the trial court granted, and JLC filed this interlocutory appeal of the trial court's order. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8). For the following reasons, we will affirm the order.

## BACKGROUND

In its original petition, JLC alleged that in early February 2019 Atmos publicly announced it had detected and repaired two natural-gas leaks in its lines. Later that month,

---

[1] Atmos is not a party to this appeal.

Atmos and the City "forced" JLC to close its church facility (Facility) after Atmos, "with the City's blessing and assistance, evacuated over 60 businesses and 70 residences in what [Atmos] determined to be the affected area [Area]," where "dangerous levels of residual [natural] gas remained trapped underground and needed to be vented." "Atmos and the City ordered that the Facility be evacuated, and thereby closed, for the purpose of abating" the residual gas, and "the City and its police department enforced the closure of the Facility beginning on February 24, 2019."

Over the next few months, "Atmos kept much of the Area closed while it bored holes to vent the residual gas trapped underneath its surface." The Facility, having been newly renovated for use as a preschool, "went unused for its intended purpose." JLC's loss of use of the Facility had "dire consequences for the church, as its members were not inclined to contribute financially to maintaining the Facility given the uncertainty that persisted as to when it would again be suitable for a meeting place" and the "unavailability of its preschool" and attendant loss of revenue. Atmos "cleared the Facility to reopen in May 2019, even though the smell of gas persisted in the Facility." However, Atmos "refused to remediate the smell of gas" and "offered no written documentation stating that the Facility was safe for occupancy," further causing JLC to "struggle[] to regain its congregation, to reopen its preschool, and to pay its bills." JLC's mortgagors eventually foreclosed on the Facility, and JLC was left "without a church home or a preschool," losing its equity in the Facility and revenue from the preschool.

JLC asserted a claim against the City for inverse condemnation[2] (i.e., a takings claim, *see Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 476 (Tex. 2012) (defining

---

[2] JLC also brought a claim against Atmos for negligence, but that claim is not before us.

2

inverse condemnation)) and sought damages of over $800,000.  The City filed an original answer and plea to the jurisdiction, asserting that JLC had not pleaded waiver of the City's governmental immunity and that, in any event, JLC had not and could not show the existence of the necessary jurisdictional fact of a takings claim that the City had proximately caused JLC's alleged damages.  *See id.* at 483 ("Proximate cause is an essential element of a takings case."); *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004) (noting that when defendant "challenges the existence of jurisdictional facts, the Court may consider relevant evidence submitted by the parties [as] necessary to resolve the jurisdictional issues raised").

JLC filed a First Amended Petition asserting that the City's governmental immunity was waived due to JLC's takings claim, *see City of Houston v. Boyle*, 148 S.W.3d 171, 177 (Tex. App.—Houston [1st Dist.] 2004, no pet.); *see also* Tex. Const. art. I, § 17, but did not add any relevant factual allegations.  The City filed a First Amended Plea to the Jurisdiction arguing that JLC's amended petition did not address or correct the "jurisdictional deficiencies" the City had identified, re-urging the arguments it had made previously about why the trial court lacked jurisdiction over the takings claim, and contending that even "[g]iven the opportunity to replead, [JLC] still does not allege any action by the City which deprived [JLC] of any property for a public purpose without compensation."  The City also asserted that "[e]ven if the City participated in the emergency evacuation to allow or participate in abatement" of the leak, such action was "a valid exercise of the City's police power to abate a threat to the health, safety, and general welfare of the people" and was "reasonable and not arbitrary."  *See City of Coll. Station v. Turtle Rock Corp.*, 680 S.W.2d 802, 804 (Tex. 1984).

After a non-evidentiary hearing on the City's plea to the jurisdiction, the trial court granted JLC seven days to file an amended petition curing the jurisdictional defects.  JLC

3

thereafter filed its Second Amended (live) Petition to which it attached verified copies of over 300 pages of documents it obtained from the City through an open-records request. In this petition, JLC added the following factual allegations: (1) JLC was "forced" to close the Facility by Atmos and the City; (2) Atmos, having no inherent authority to order evacuations, obtained assistance from the City via its fire and police departments to order the closing of over sixty businesses and seventy residences in the Area, which Atmos had determined to be affected by the residual trapped gas; (3) the Facility was located within the Area, so the City's police and fire departments enforced the closure of the Facility beginning on February 24, 2019; (4) Atmos coordinated its "protracted response" to the gas leak with the City and had regular meetings with City officials to provide updates on the status of Atmos's remediation; and (5) Atmos reimbursed the City for overtime pay incurred by its police officers who enforced the closure of affected businesses and residences. About a month later, the trial court granted the City's First Amended Plea to the Jurisdiction, and JLC timely filed this interlocutory appeal of that ruling.

## DISCUSSION

In one issue, JLC complains that the trial court erred in granting the City's plea to the jurisdiction because JLC alleged and proved sufficient jurisdictional facts to support its inverse-condemnation claim, specifically that Atmos "coordinated its response to the gas leak with [the City's] officials" and "enforced its efforts with [the City's] police power." Therefore, JLC concludes, it stated a valid claim for inverse condemnation for which the City's governmental immunity is waived. At the very least, JLC continues, it is "entitled to challenge the reasonableness of [the City's police-power] actions" in court.

4

We review the trial court's ruling on the City's plea to the jurisdiction de novo. *Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 929 (Tex. 2010). When, as here, a plea to the jurisdiction challenges the existence of jurisdictional facts, our standard mirrors that for review of a traditional summary judgment, *see Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019) (citing *Miranda*, 133 S.W.3d at 227–28), and we may consider such evidence as necessary to resolve the jurisdictional issues raised even if the evidence implicates both the subject-matter jurisdiction of the court and the merits of the case, *Miranda*, 133 S.W.3d at 227. If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228.

JLC cites evidence attached to its Second Amended Petition that it contends demonstrates "the coordination of the abatement response to the gas leak between Atmos and [the City's] officials, from [the City's] emergency management coordinator to the police sergeant in charge of ensuring that Atmos paid the overtime being incurred by [the City's] police officers." Some of JLC's evidence indicates that the City and Atmos may have jointly issued evacuation orders and that the City enforced the orders with its police force, including by preventing citizens from prematurely returning to their properties. Also, JLC alleged that Atmos had no "inherent authority" to order evacuations and was able to order them only through the City's "assistance" through its police and fire departments' "ordering the closing" of the Facility and of "over 60 businesses and 70 residences in what [Atmos] determined to be the affected area." JLC's evidence included copies of the public reports that Atmos made declaring that "dangerous levels of residual gas remained trapped underground" beneath the Area and "needed to be vented." Therefore, over the next few months, Atmos "kept much of the Area closed while it bored holes to vent the residual trapped gas," but its "protracted response" and the

5

"unreasonable length of time" it "coordinated" with the City to keep the Facility closed prevented JLC from using the Facility for its intended purpose. Even when Atmos "cleared the Facility to reopen in May 2019," the smell of gas in the Facility "persisted," further causing JLC to "struggle" to retain its congregation and open its preschool and, thus, to pay its bills. As JLC concluded in its live petition, the City is liable for inverse condemnation because the City "used its police power to back Atmos in ordering that the Facility be evacuated and thereby closed for an unreasonably long period of time for the purpose of abating, without risk of igniting, the residual gas that Atmos determined remained under the Area."

However, even when viewed in JLC's favor, *see id.* at 226–27, these allegations and evidence do not raise a fact question on the jurisdictional issue of whether the City's challenged actions proximately caused the harm that JLC alleges, i.e., its inability to use the Facility for several months while Atmos remediated the "dangerous" leak and JLC's attendant inability to generate revenue and pay its mortgage. *See Hearts Bluff*, 381 S.W.3d at 483–84 ("Causation is intrinsic to a takings claim. The governmental entity sued must have taken direct governmental action, or have been the proximate cause, of the harm."); *State v. Hale*, 146 S.W.2d 731, 736 (Tex. 1941) (noting that "true test" for takings claim is whether governmental entity "intentionally perform[ed] certain acts in the exercise of its lawful authority . . . which resulted in the taking or damaging of plaintiffs' property, and which acts were the proximate cause of the taking or damaging such property"); *City of Dallas v. Ludwick*, 620 S.W.2d 630, 632 (Tex. App.—Dallas 1981, writ ref'd n.r.e.) (observing that to recover on takings claim plaintiff needed to show that city's denial of building permit was "the proximate cause of [plaintiff's] alleged damages" and reversing judgment because there was no evidence of such causation). "The components of proximate cause are cause in fact and foreseeability . . .

6

[and] '[c]ause in fact' means that the act or omission was a substantial factor in bringing about the injury, *without which the harm would not have occurred.*" *Brandywine Hous., Ltd. v. Texas Dep't of Transp.*, 74 S.W.3d 421, 426 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (citing *Doe v. Boys Club of Greater Dall., Inc.*, 907 S.W.2d 472, 477 (Tex. 1995)).

In its own pleadings, JLC alleges that Atmos's gas leak and the associated danger to buildings in the Area and their occupants—including the risk of gas ignition—was the proximate cause of JLC's inability to use the Facility for its "intended purpose," which continued beyond the date when Atmos "cleared" the Facility for occupancy due to the smell of gas that "persist[ed]." Although the City may have "assisted" Atmos in ordering evacuations or even ordered evacuations itself, it was the gas leak, the residual gas underneath the Area, Atmos's public reports of the dangers to buildings and people in the Area and the need for evacuations, and the persistent smell and danger that prevented JLC from using its Facility. Based on JLC's own pleadings and evidence, even had the City not allegedly issued evacuation orders or supported and enforced those of Atmos, JLC and its congregants would have been unable to occupy and use its Facility because of the hazardous conditions, persistent gas smell, risk of ignition, and its congregants' reluctance to occupy the Facility in the absence of a certificate of occupancy. Thus, JLC cannot reasonably contend that it would not have suffered its alleged damages but for the City's alleged actions, which negates proof of the element required for a takings claim that the City be a cause in fact of JLC's alleged damages. *See Hearts Bluff*, 381 S.W.3d at 483–84; *see also Ryder Integrated Logistics, Inc. v. Fayette County*, 453 S.W.3d 922, 929 (Tex. 2015) ("Cause in fact is essentially but-for causation."). We conclude that JLC has not stated a claim for inverse condemnation because neither the evidence nor the allegations raise a fact issue on the question of whether the City's actions proximately caused the inability to use the Facility for

7

its "intended purpose." We accordingly hold that the trial court properly granted the City's plea to the jurisdiction.[3]

## CONCLUSION

We affirm the trial court's interlocutory order granting the City's plea to the jurisdiction.

_____

Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Smith

Affirmed

Filed:   October 6, 2021

---

[3] Because we conclude that judgment in favor of the City is proper on this ground, we need not address the City's alternate ground in which it argued that its actions were a reasonable exercise of its police power. *See* Tex. R. App. P. 47.1, 47.4.